UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | (Motions Judge R.M. Collyer) |
| | : | |
| v. | : | Case No.  06-306-03 (TFH) |
| | : | Magistrate No. 06-410-01 |
| CHRISTOPHER FLEMING, | : | |
| Defendant. | : | Hearing Date: October 23, 2006 |

## EMERGENCY MOTION TO REVIEW AND APPEAL OF RELEASE ORDERS

*COMES NOW*, the United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, respectfully to appeal and request review of the Magistrate Judge's decision releasing Defendant Fleming pending trial, denial of the Government's request for a detention hearing and for a stay of Defendant Fleming's release pending a hearing on the motion for review of the release order in Criminal Case Nos. 06-306-03 (TFH).  As a result, the Magistrate Judge denied the Government's motion for a detention hearing under 18 U.S.C. § 3142(f)(1)(C) and released defendant pending trial.  We ask this Court (1) to overturn this ruling; (2) to find that defendant is charged with a "detainable" offense, that is a crime for which the Controlled Substances Act prescribes a maximum term of imprisonment of ten or more years; and, (3) to set this matter down for a detention hearing.  In support whereof, we submit as follows:  The record shows that no condition nor combination of conditions for defendant's release will reasonably assure the safety of the community.  Reform Act, 18 U.S.C. § 3142(f)(1)(C).[1]  That law presumes that persons should

---

[1] That motion was based on 18 U.S.C. § 3142(f)(1)(C), which authorizes pre-trial detention in any case involving a crime under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, carrying a maximum penalty of ten years or more in prison.  All of the crimes charged in the indictment carry

be jailed pending trial when charged with the crimes for which defendants have been indicted. The undersigned Government Counsel and Defense Counsel for Defendant Fleming, FPDS Attorney Danielle C. Jahn, requests that this Court set the matter down for a hearing on Monday, October 23, 2006. (The undersigned Government Counsel has a doctor's appointment this afternoon, Friday, October 20, 2006, and can therefore be contacted via cellular telephone no. (202) 353-5108.)) Therefore, the Government asks this Court to hold defendant without bail pending trial. In support whereof, we submit as follows:

## BACKGROUND

1. On October 2, 2006, U.S. Magistrate Judge Deborah A. Robinson, in Magistrate Case No. 06-410, denied the Government's request to hold Defendant Fleming without bail pending trial. That motion was based on 18 U.S.C. § 3142(f)(1)©, which authorizes pre-trial detention in any case involving a crime under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, carrying a maximum penalty of ten years or more in prison. At the detention hearing, in support of its motion, the Government proffered the indictment and a statement of facts of the case. The Magistrate Judge Robinson denied the Government's motion for pre-trial detention. Instead, she released Defendant Fleming into the High Intensity Supervision Program with a stay away order from the offense location. The single count upon which Defendant Fleming was presented on in Magistrate Case No. 06-410, ultimately became Count Three of his indictment in Criminal Case No. 06-306.

2. On October 12, 2006, the Grand Jury for the United States District Court for the District of Columbia rendered a six count indictment against Defendants Michael Richards, Russeline Deniel Miles and Christopher Fleming, which resulted in Criminal Case No. 06-306, which alleged: In

---

such penalties.

Count One that from January 2006 through September 2006, that the three defendants aided and abetted one another to unlawfully maintain a premises to manufacture, distribute, store and use crack. In Counts Two and Three, that on August 18, 2006 and August 29, 2006, respectively, the three Defendants aided and abetted one another to distribute more than 50 grams of crack. In Counts Four and Five, that on September 22, 2006 and September 26, 2006, respectively, the three Defendants aided and abetted one another to distribute a detectable amount crack. And, that on September 26, 2006, the date of their arrests, that the three Defendants possessed with the intent to distribute and aided and abetted each other to illegally possess more than 50 grams of crack.

     3. On October 19, 2006, the Government sought to hold Defendant Fleming without bond pending trial in Case No. 06-306 based on his multiple positive drug tests, his pending Superior Court Misdemeanor case, a warrant for his arrest from Salisbury, Maryland for misdemeanor possession of marijuana charge, his indictment in Criminal Case No. 06-306-03, the fact of that case, and again based on 18 U.S.C. § 3142(f)(1)©. Again, Magistrate Judge Robinson denied the Government's request and found that the United States was not entitled to a detention hearing in the newly indicted case, Criminal Case No.06-306, based on her prior ruling in Magistrate's Case No. 06-410, and because the United States had not made the request in writing. We respectfully submit that no such writing is required. Further, this is an emergency matter because Defendant Fleming is apparently, being held for three days for the law enforcement authorities in Salisbury, Maryland to extradite Defendant Fleming based on their outstanding arrest warrant. Defendant Fleming committed the crimes stated in his indictment while he was on release in two misdemeanors cases, one in the Superior Court of the District of Columbia for destruction of property and second degree theft, and the second from Salisbury, Maryland for possession of marijuana.

4. In making her ruling of October 2, 2006, Magistrate Judge Robinson found that Defendant Fleming had overcome the presumptions in favor of their detention because, *inter alia*, Defendant Fleming had complied with his conditions of release in his Superior Court misdemeanor case, she thought that he could benefit from drug treatment due to his multiple positive drug tests, and because Defendant Fleming was not under any other form of judicial supervision at the time of his arrest. The Magistrate Judge also pointed to Defendant Fleming's community ties reflected in the presence of his mother in Court.

The Government's Proffer, Case No. 06-306 and 06-410-M:

5. On August 18, 2006, the Metropolitan Police Department's Narcotics and Special Investigations Division (MPD/NSID), Unit while conducting undercover narcotics operations, in the high crime area of 65 Hawaii Avenue, Northeast, Washington, D.C., purchased approximately 61 grams of cocaine base from these coconspirators for $2,400.00, in U.S. currency. Specifically, the purchase was made directly hand-to-hand from Defendant Richards, who transferred the 61 grams of cocaine base to the undercover officer, in exchange for $2,400.00, in U.S. currency. However, at the direction of Defendant Miles, Defendant Richards gave her the $2,400.00, that the undercover officer had paid Defendant Richards for the cocaine base that he received contemporaneously from Defendant Richards. Undercover investigation demonstrates that Defendants Richards, Miles and Fleming, utilized Apartment No. 202, 65 Hawaii Avenue, Northeast, Washington, D.C., to store and sell cocaine base from January 2006 through September 2006 based on evidence gained by the MPD NSID Unit.

6. On August 29, 2006, the Metropolitan Police Department's Narcotics and Special Investigations Division (NSID) conducted a narcotics operation in the high crime area of 65 Hawaii

Avenue, Northeast, Washington, D.C. The NSID had identified Defendants and coconspirators Michael Richards, Russeline Miles and Christopher Fleming as major cocaine base, also known as crack distributers in Northeast Washington, D.C. On August 29, 2006, at approximately, 6:30 p.m., the NSID, conducted an undercover narcotics operation which had been set-up directly with Defendant Richards via a recorded telephone call for the purchase of 62 grams of cocaine base. At approximately, 7:30 p.m., an undercover officer (UC) met with Defendants Michael Richards, Russeline Miles and Christopher Fleming, in the front of XX XXXXXX Avenue, Northeast, Washington. While the UC was on a recorded telephone call to Defendant Richards, Defendants Miles and Fleming came out of XX XXXXXX Avenue. Defendant Fleming sat in the back of the UC vehicle, and Defendant Miles sat in the front and she advised that Defendant Richards was inside XX XXXXXX Avenue watching the cocaine base transaction. While still on the recorded telephone call with Defendant Richards, he assured the UC that it was save to deal with Defendants Miles and Fleming, by stating that they were "family." Accordingly, Defendant Fleming handed the UC 60 grams of cocaine base which concealed inside a black plastic bag. The UC then gave Defendant Miles, $2,400.00, in U.S. currency. Defendant Miles openly counted the money and both Defendants Miles and Fleming exited the UC vehicle.

      7. On September 22, 2006 and September26, 2006, undercover purchases of cocaine base where made directly from Apartment No. 202 from Defendants Richards, Fleming and Miles. The NSID obtained a District of Columbia Superior Court search warrant for Apartment No. 202, which is leased by Defendant Fleming.

8. On September 26, 2006, at approximately, 7:00 p.m., the NSID sought to execute the search warrant it had obtained for Apartment No. 202. Additionally, the NSID had set-up a deal for 62 grams of cocaine base via a recorded telephone call to Defendant Richards. Upon their arrival, Defendants Richards, Miles, and Fleming were all standing outside of the building. The NSID based on the facts of investigation sought to detain the three defendants. Defendant Miles spontaneously told the police that she had a large quantity of cocaine base in her upper undergarment and confessed that she and Defendants Richards and Fleming had been distributing cocaine base together for approximately 18 months. Search incident to arrest of Defendant Richards disclosed $686.00, in U.S. currency and 4 $10.00 ziplocks of cocaine base which ziplocks matched the numerous empty ziplocks which were seized from inside Apartment No. 202, which apartment was leased by Defendant Fleming. All the substances seized and purchased during this undercover cocaine base investigation field-tested positive for cocaine.

## ARGUMENT

9. The Government submits that this Court should overturn the decisions to release Defendant and order him held without bail instead. When a detention motion has been denied, 18, U.S.C. § 3145(a) states:

> **(a) Review of a release order –** If a person is ordered released by a magistrate, . . .
>
> > **(1)** the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .
>
> The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not raised previously. In short, the Court may proceed in the way that best enables it to answer the question posed: whether any condition or combination of conditions will reasonably assure the safety of any other person and the community? To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . ***This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.***

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3486-3487. (Emphasis added.)[2]

---

[2] Regardless of why the government sought a detention hearing, the Court always must consider whether defendant's release is a danger to the community. This point is made throughout the Bail Reform Act. Section 3142(e), which authorizes detention without bail pending trial, states:

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required ***and the safety of any other person and the community***, such judicial officer ***shall order*** the detention of the person before trial.

Emphasis added. Similarly, § 3142(f) states:

> The judicial officer shall hold a hearing to determine whether any condition of combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such

10. No condition of release or combination of them can ensure that defendants will not pose a danger to the community if released. This is based first upon the presumption to that effect written into the Bail Reform Act. 18 U.S.C. § 3142(e) ("Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions of release will reasonably assure the . . . safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act."). This presumption, triggered by defendants' indictment, is re-enforced overwhelmingly by the facts of their case.

11. Similarly, § 3142(f) states:

> The judicial officer shall hold a hearing to determine whether any condition of combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person *and the safety of any other person and the community* –
>
> (1) upon motion of the attorney for the Government, in a case that involves,

---

person *and the safety of any other person and the community* –

(1) upon motion of the attorney for the Government, in a case that involves,

(C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq*.) . . .

Emphasis added. This point is again made in § 3142(g), **Factors to be considered**, which states:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required *and the safety of any other person and the community*, take into account the available information concerning –
>
> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person . . .
> (4) *the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .*

(Emphasis added.)

>> (A) a crime of violence . . .
>
> (2) Upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves –
>
> (A) a serious risk that such person will flee . . . .

Emphasis added.

12. This point is again made in § 3142(f), **Factors to be considered**, which states:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required *and the safety of any other person and the community*, take into account the available information concerning –
>
> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person . . .
>
> (4) *the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .*

(Emphasis added.) Thus, at all times, the issue of defendant's danger to the community if released should be at the forefront of the Court's thinking when ruling on pre-trial detention.

A. *Defendant is in the drug trade, and is a threat to return to it if released*:

13. The facts of these cases demonstrate the danger that Defendant's release poses. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . . The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking

>constitutes a danger to the "safety of any other person or the community.

S.Rep. No. 225, *supra*, at 3195-3196.

*B. Defendant's crimes implicate both danger to the community and the risk of flight*:

14. Defendant Fleming's crimes directly implicates both the risk of danger to the community and of flight. The rationale for detaining an individual is the fear that he will not obey an order to return to court or to obey the law. The release of any defendant must, therefore, be predicated on the Court's belief that its order will be obeyed. A potent sign that the Defendant Fleming cannot be trusted to obey any order of the court, including an order to return to court when required. "As in any human endeavor, what is past is prologue and there can be no better evidence bearing on whether the defendant will appear when required than whether he has appeared when required in the past *and has been faithful to the conditions of his conditional release, probation, or parole*." United States v. Battle, 59 F.Supp.2d 17, 20 (D.D.C. 1999) (emphasis added), Facciola, MJ., citing United States v. Robinson, 27 F.Supp.2d 1116 (S.D.Ind. 1998) "[A]scertaining whether a defendant presents a serious risk of flight requires inquiry into his behavior when released previously on conditional release, probation, or parole." United States v. Battle, supra, id. Consequently, release of Defendant Fleming raises an exceptionally severe risk of danger and flight. Every time he sold drugs to an undercover officer, he essentially was thumbing his nose at the Judge in the Superior Court and Salisbury, Maryland to whom he gave a solemn oath that he would commit no crime while released. The Government submits that Defendant Fleming's overall picture is of a person who calculatedly, persistently, and flagrantly breaking his bail, his word to the Court, and the criminal law. Defendant Fleming must be deemed to give no more thought to the value of his

oath to the Court than to the consequences of his illegal narcotic trafficking for the drug-addled addicts, like himself, upon whom his crimes prey.

15. Defendant Fleming's release is equally fraught with peril to the community. In virtually each instance he utilized telephones, stealth, cover and concealment, and insulated himself with go-betweens to sell his crack. Indeed, Defendant Fleming has shown plainly that he will do what he will to this community. And, in this case, it is not just the community at large, nor some remote place, but the very neighborhood closest to him .

16. Against these facts, Defendant Fleming principally relies for his release on community ties to overcome the presumption that he should be held pending trial. Again, the framers of the 1984 Bail Reform Act thought differently. "The Committee also notes with respect to the fact of community ties that it is aware of the growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community." S.Rep. No. 225, supra, 3207. Nor is it clear why community ties, which stopped Defendant not at all from selling drugs as described above, now will keep them from doing so again.

17. In summary, Defendant Fleming's release constitutes a clear, convincing danger to the community. The order releasing him should be reversed for the reasons set forth above and for any other reasons appearing at a hearing on this motion. Additionally, we believe that it is not within the interests of justice for the District of Columbia to potentially allow a foreign state jurisdiction to obtain control of Defendant Fleming and potentially for a severance of defendants due to Defendant Fleming's prosecution in Salisbury, Maryland.

**WHEREFORE**, the United States respectfully prays this Honorable Court to order Defendant held without bail pending trial..

        Respectfully submitted,

        JEFFERY A. TAYLOR
        UNITED STATES ATTORNEY
        D.C. BAR NO. 498-610

By: _____
        MARTIN DEE CARPENTER
        Assistant United States Attorney
        Organized Crime and Narcotics Trafficking Section

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this pleading has been mailed, postage prepaid, this 20th day of September, 2006, to counsel for Defendant Fleming, Danielle Jahn, Esquire, by electronic filing and by Facsimile (202) 208-7501, and by electronic filing to:

Attorney Danielle C. Jahn
Email: dani_jahn@fd.org

Attorney Brian K. McDaniel
Email:   kbmassociates@aol.com

Attorney Joanne D. Slaight
Email: jslaight@att.net

_____
MARTIN DEE CARPENTER, Bar No. 431-211
Assistant United States Attorney
Organized Crime & Narcotics Trafficking Section
555 4th Street, N.W., Room No. 4116
Washington, D.C.  20530
(202) 514-7063

Email: martin.carpenter2@usdoj.gov